## David Robinson v. Rowland Cromelein and others.

*Answer to bill in chancery, when responsive.* Where a bill to foreclose a mortgage alleged it to have been given in consideration of an actual indebtedness, to an amount named, which it was stated remained unpaid, and called for an answer under oath, an answer purporting to set forth the real circumstances under which the mortgage was given, and showing it to have been in part for money advanced, and in part for property at a valuation, which the party had failed to convey according to agreement, was held to be responsive, inasmuch as it explained the whole transaction out of which the mortgage originated, and upon which its validity depended.

*Agreement to convey specific lot, performance of.* Where a contract to convey a number of lots of land at a gross sum, gave the grantee an option to select others in lieu thereof, to be laid out on certain streets not then platted, the grantor had no right to compel the acceptance of any undesignated lots, except such as the grantee should choose, and a deed, embracing some designated and some not designated, which the grantee refused to receive, was held no performance, but entirely void as against the latter, as the price could not be apportioned.

And the grantor had no right to debar the grantee from such selection, by so platting his new lots as not to conform in size with the lots designated.

*Mortgage, when security for advances.* When a mortgage is given for an amount exceeding what is advanced, it is valid in the hands of the mortgagee, and those standing in no better light, only to the extent of the real advances.

*Heard April 16th, 17th and 20th. Decided April 23d.*

Appeal in Chancery from Wayne Circuit.

This case was heard on bill and answer.

The bill was filed to foreclose a mortgage on certain real estate in Detroit, given to secure the payment of $5,500. Defendants answered in substance denying said indebtedness, and setting up that the consideration of said bond and mortgage consisted in part of a proposed loan of $3,000, and the purchase of certain lots in Pittsburg;

that a portion only of the said $3,000 was advanced, and that the contract as to the lots was unperformed.

A decree was made in the court below in favor of complainant dismissing the cross-bill, and allowing the money actually paid. The agreement to convey the said real estate was also rescinded.

The facts and the pleadings are sufficiently stated in the opinion.

*J. P. Whittemore,* for complainant.

*George E. Hand* and *George A. Wilcox,* for defendants.

COOLEY J.

The bill in this case was filed to foreclose a mortgage of $5,500, given by the defendants, Rowland and Amelia Cromelien, to one William F. Willock. The bill averred that the defendants, on or about the 15th day of February, 1856, became and were justly indebted to said Willock in the sum of $5,500, and being so indebted, in order to secure the payment thereof, with interest, executed and delivered to Willock the bond and mortgage now in suit, which Willock afterwards, on February 18, 1856, assigned for a valuable consideration to complainant. The bill called for an answer on oath, and the Cromeleins answered, denying that at the time mentioned, or at any other time, they were indebted to Willock, and setting forth substantially the following as the circumstances attending the giving of the bond and mortgage, and the consideration therefor.

That said defendants having occasion to procure a loan of money for business purposes, Willock, who was a broker in Pittsburg, Penn., proposed to procure it for them, and informed them that if they would purchase fourteen lots of land, say of twenty feet front and about one hundred and ten feet deep, situate in the city of Alleghany, then known

as Benvilla, at the gross sum of $2,500, they should have a loan of $3,000, securing the whole sum of $5,500, on certain lands in Detroit; that Willock, in making this proposition, was acting for one Thompson Bell, of Pittsburg, who was to furnish the money and the lands; that defendants entertaining this proposal favorably, Rowland Cromelein and said Willock went to Bell's office together, where a rough plat of Benvilla was produced by Bell, and an arrangement agreed upon by which Bell was to loan defendants the $3,000, and deed to said Amelia Cromelein the fourteen lots of land, with fronts of twenty feet, and one hundred and ten feet or thereabouts in depth, and the defendants were to give their bond for $5,500, with mortgage on the Detroit lands, payable in two years, with six per cent. interest; that the snow was then lying upon the ground, and the fourteen lots in Benvilla were not selected, but Bell stated that he was about to make a new plat, which would exhibit the lots more fully, and as soon as the melting of the snow would permit, said Rowland should have the privilege of selecting from the new plat such fourteen lots then (at the time of the making of the contract) unsold as he should prefer, and Bell should convey a good title thereto to said Amelia; that the bond and mortgage were executed by defendants to Willock, at Bell's suggestion; that Bell then paid $1,500 of the $3,000 agreed to be loaned them, but under various pretexts postponed paying the remainder, but did afterwards pay, in all, $950 more, making $2,450 in all; that Bell furnished no new plat of Benvilla until December 6, 1856, when said Rowland received one from him by mail, with red lines drawn round certain portions, and the word "sold" written thereon; that on February 17, 1857, said Rowland wrote Bell, apprising him of the selection of fourteen of the lots not marked sold on the plat, and requesting Bell to send a deed therefor to said Amelia; that three of these lots were on Federal street, four on Bell avenue, and seven on Willis street,

ROBINSON *v.* CROMELEIN.

the numbers being particularly given in the answer; that on February 21, 1857, defendants received by mail a deed from Bell to said Amelia, covering the three lots on Federal street, and also eleven other lots on Willis street, none of which had been selected by defendants, whereupon said Rowland, without delay, notified Bell that the deed did not cover the lots selected, and requesting and demanding that he convey those chosen, which Bell refused to do, assigning as a reason that he had sold and disposed of a portion of them; that the defendants never accepted or recorded the deed from Bell, and that they have no other than a verbal contract from him for the conveyance of the fourteen lots, which can not be enforced against him.

The cause being put at issue upon this answer, Bell's testimony was taken as the sole evidence in the case, except the answer. In all important particulars, it corresponds with the answer in its statement of facts, showing the original consideration of the bond and mortgage to be as stated by defendants, and that they were assigned by Willock to complainant, at Bell's request, and are now held and foreclosed in his interest. Bell, however, gives with his testimony what he says he believes is a copy of his agreement to convey the fourteen lots to Amelia Cromelein, and which is in writing, and as follows:

"PITTSBURG, February 18, 1856.

"I promise to convey to F. A. Willock, or R. C. Cromelein, clear of all incumbrances, as soon as satisfactory information is received from Detroit about mortgage of $5,500, fourteen lots of twenty feet front by one hundred feet deep, part of the Benvilla plat, three lots fronting on Federal street, and eleven immediately back. I further promise, if said Willock or Cromelein should prefer the same number of lots on Willis street, or on Bell avenue, as marked on plan, that he shall have his choice, about the 1st of April, or when the weather permits a proper examination.

"THOMPSON BELL."

Bell testifies that he afterwards performed this agreement, by conveying fourteen lots in pursuance of it, but

he gives no explanation, and fails to specify what lots he conveyed.

The court below rendered decree in favor of complainant for the $2,450 and interest only, deducting a payment, and making certain allowances for taxes. Complainant appeals, claiming to be entitled to the whole amount of the bond and mortgage, less the payment made thereon, and that portion of the $3,000 which, it is conceded, the Cromeleins never received.

The only question on the appeal is, whether the court was right in making a deduction from the mortgage of the sum included therein, as the price of the fourteen lots in Benvilla.

Complainant's position is, that the answer, in what it sets forth as to the consideration of the bond and mortgage, and the partial failure, was not responsive, and, therefore, not evidence. We have not been able to yield our assent to the argument on this point. The bill avers an indebtedness by defendants to Willock as the occasion upon which they gave these obligations, and calls upon them to answer on oath in respect thereto. They do answer specifically, denying any such indebtedness, and stating that the bond and mortgage were given for a consideration, a part of which was received at the time, and the remainder to be furnished afterwards, but which they have never received. The answer, if true, shows that the mortgage was based on no consideration, and had no original validity, except to the extent of $2,450. We have no doubt this is proper evidence against complainant, and, as we have said, it is corroborated by Bell's evidence, so far as that goes. It is claimed, however, that the deed from Bell was in compliance with his contract, or, if it were not, then defendants could only claim, by way of reduction, any difference between the value of the lots conveyed, and those purchased by him, and which should have been conveyed. We do not perceive how a man can be compelled, under

such a contract, to receive a conveyance of other lots than those he had bargained for; and as it is not disputed that the Cromeleins refused to accept the deed as a performance by Bell, we have only to see whether that deed can be regarded as in compliance with the contract.

Assuming the copy given by Bell to be correct, Mrs. Cromelein was to have the three lots on Federal street, and eleven immediately in the rear, with the privilege, however, of substituting others on Bell avenue and Willis street. Eleven others were selected, which Bell refused to convey on the claim that a part of them had been sold to others. On the argument in this court it is claimed that he was justified in refusing because the lots so selected, though of the same front, were of greater depth than those in the rear of the Federal street lots. This excuse can not avail for two reasons: *First*, If the Cromeleins had failed to exercise their right to select other lots instead of those in the rear of the ones on Federal street, then, under the contract, the latter were to be conveyed, and Bell had no right to substitute others on Willis street as he did. There can be no pretence that under any circumstances he could have any right to select for the Cromeleins, as the contract itself fixed the lots they were to have unless they voluntarily substituted others. But, *Second:* The contract did not confine Cromelein's choice to lots of a specified depth. When it was entered into, the lots on Willis street and Bell avenue were not yet laid out, and it was optional with Bell to fix the size to suit himself. The maps now produced show that when they came to be platted, a part of them were made of the same depth as those on Federal street, and a part deeper. Every lot on Bell avenue is deeper than the Federal street lots; so that if complainant's theory is correct, the Cromeleins were altogether debarred of selection on that street by the voluntary act of Bell in giving additional depth to his lots. We think this suggestion entirely

an afterthought, especially as it does not appear that Bell based his action in conveying unselected lots to Mrs. Cromelein on any such ground. We also think the Cromeleins were justified in refusing to accept a deed which covered lots not embraced in the contract, but selected for them arbitrarily by Bell without even the semblance of authority.

We have not considered it important to discuss any question based upon a supposed difference between show-ing by the answer the original invalidity of the mortgage, in part or in whole, or showing by way of defense a subsequent failure of consideration; as the evidence in the present case proves clearly that the securities never had any force, as such, beyond the moneys advanced by Bell. *Ladue v. Detroit and Milwaukee R. R. Co.,* 13 *Mich.* 380. We think the decree correct, and it should be affirmed, with costs of this court to the appellees.

CAMPBELL J. and MARTIN Ch. J. concurred.

CHRISTIANCY J. did not sit in this case.