## Ira McKinney, Administrator v. Albert Miller et al.

*Assignment of Mortgage: Whether absolute or conditional.* Where a party claims
to have purchased a mortgage at much less than its real value; and the evidence
is not clear whether the transaction were a sale of the security, or only a mort-
gage of it, slight circumstances will be sufficient to determine the transaction
to be a mortgage and not a sale.

*Mortgage not Sealed.* The statute which provides that no bond, etc., shall be
declared invalid for want of a seal (Comp. L. § 4,550) was intended to give the

unsealed instrument all the force and effect that a sealed one of the same tenor would have.

*Satute of limitations in equity.* The bar to a remedy in equity has reference rather to the nature of the property to be affected, than to the character of the instrument which may affect it.

*Bill to foreclose a Mortgage : Allegata et probata.* Where an assignee of a mortgage filed a bill to foreclose it, and the Court find that the assignment was taken as a security only, such limitation of the complainant's interest, will not affect his right to maintain his bill on the case he has stated, but goes only to the amount of the decree.

*Mortgagees holding separate securities for the same debt.* One who holds several mortgages to secure a single debt may foreclose either of them at his option separately until his debt is satisfied.

*Foreclosure sale in parcels : Inversely to the order of alienation.* The rule that—where the mortgaged premises have been sold in parcels at different times, that which was first sold shall be last resorted to for the satisfaction of the mortgage—is well founded in equity ; and if there be no intervening equities to disturb its application, ought to be maintained.

*Heard July 10. Decided October 5.*

Appeal in Chancery from Genesee Circuit.

Bill to foreclose a mortgage executed by Albert Miller to Cornelius L. Russell, to secure the payment of three promissory notes amounting to $3,000, upon blocks 19, 20, 22, 24, 25, 34 to 39 inclusive, 41, 57 to 60 inclusive, 65 to 68 inclusive, and parts of 26 and 27 in the village of Portsmouth in Bay County. The bill avers that the mortgagee sold the notes and mortgage to David Russell for $2,000 ;—that David Russell had since died, and that the complainant was his administrator. The mortgagor Albert Miller, the mortgagee Cornelius L. Russell, Mary Ann Miller and Albert Miller (second), are made parties defendant.

*Defense* :—By Albert Miller—That he and the mortgagee, C. L. Russell and one Crowl, were partners, that the notes and mortgage were made to be negotiated to raise money for the partnership, but that they were not so negotiated :—That on the dissolution of the partnership, the notes and mortgage still being in the possession of C. L. Russell, he (Miller) agreed to convey blocks 19 and 20 to Russell and to relinquish all his interest in the personal property of the partnership, and Russell agreed to pay all its debts:—That he did con-

vey blocks 19 and 20 according to his agreement :—That if
Cornelius L. Russell ever assigned the notes and mortgage
to David Russell, it was in fraud of his rights :—That Cor-
nelius L., not surrendering the notes and mortgage, he
(Miller) filed a bill against him in the Saginaw Chancery
Circuit and obtained a decree against him that the notes
and mortgage should be delivery up to be cancelled. He
alleges that the facts were known to David Russell in his
lifetime :—That the notes are barred by the statute of limi-
tations :—That the complainant had sold and conveyed
blocks 19 and 20 to " the other Albert Miller " for $11,500:—
That Cornelius L. Russell is the son and sole heir at law
of David Russell and that the suit is prosecuted in his in-
terest.

By Mary Ann Miller—denying the existence of the mort-
gage—insisting upon the decree that the mortgage be de-
livered up to be cancelled as stated in the answer of Al-
bert Miller ; denying the good faith of the transfer of the
mortgage to David Russell and claiming to be a purchaser
in good faith for a valuable consideration of the mortgaged
premises.

By Albert Miller (second)—denying that the complai-
nant was legally the administrator of David Russell, and the
good faith of the transaction between Cornelius L. and
David Russell :—insisting upon the decree of the Saginaw
Chancery Circuit that the mortgage should be cancelled;
and that he had purchased of the complainant Blocks 19
and 20 in good faith for a valuable consideration, the pur-
chase being intended to include the title which the com-
plainant had acquired through sundry mesne conveyances
from Albert Miller the mortgagor, as well as the interest
he held, if any, as the administrator of David Russell:—
That the Blocks so purchased were the first sold by Albert
Miller after the execution of the mortgage. And he claimed
that in case the Court shall find that the lien of the

mortgage remains, that they should be last resorted to for the payment of the mortgage indebtedness.

The cause was transferred under the statute to the Genesee Chancery Circuit and upon the hearing a decree was entered dismissing the bill ; from which the complainant appeals to this Court.

*Isaac Marston*, and *John Moore* for Complainant.

*W. L. Webber*, for defendants (Judge) Albert Miller and Mary Ann Miller.

COOLEY CH. J.

The bill in this cause was filed in 1866, to foreclose a mortgage, given April 23, 1851, by Judge Albert Miller to Cornelius L. Russell, to secure the payment of three promissory notes of one thousand dollars each, falling due respectively in one, two and three years from the first day of May, 1851. The mortgage covers blocks nineteen and twenty, and also a number of other blocks, and parts of blocks, in the village of Portsmouth, according to the recorded plat thereof, and was duly acknowledged and recorded, but appears not to have been under seal. The complainant alleges that the notes and mortgage were sold by Cornelius L. Russell to David Russell, on or about the first day of December, 1851, and that a written assignment thereof was executed April 24, 1852, which, however, was not acknowledged or recorded until April 26, 1862. David Russell appears to have deceased soon after the last mentioned date, and McKinney, was appointed administrator of his estate in Bay County, Michigan, March 28, 1863, and he claims the whole amount of the notes and mortgage to be now unpaid and owing to him as such administrator.

At the time this mortgage was given, it is agreed on all sides that Judge Albert Miller, Cornelius L. Russell, and one Lyman Crowl were in partnership in the business of

manufacturing and selling lumber; the manufacture being carried on, at Portsmouth, under the supervision of Miller and Crowl, and the sale at Cleveland, Ohio, where Russell resided and took charge. It is also agreed that the partnership was then greatly in need of money; and at Russell's request this mortgage was made by Miller, covering land to which he had, or claimed to have, the legal title, but in which his partners had,—as we think the evidence shows,—an equitable interest, and, at the same time, another mortgage was made by Miller and Crowl for fifteen hundred dollars, and the two were sent to Russell, to be negotiated to raise money for the partnership. The parties are not agreed whether they actually were negotiated or not. Russell testifies that after keeping them in his hands for some time, and making ineffectual attempts to dispose of them, he, finally, in December, 1851, sold the two mortgages with the accompanying notes to David Russell, his father, who resided in the State of New York, for the sum of two thousand five hundred dollars, and that he informed Miller and Crowl of the sale, and that they expressed satisfaction with it. All this is denied by Miller, who says he never heard of any such sale, and that on the contrary C. L. Russell, in May, 1852, informed him the mortgages had not been sold, and were then at Cleveland, and agreed to surrender them up to be cancelled. At the time last mentioned the parties agree that the partnership was dissolved by consent; C. L. Russell taking the bulk of partnership property, and agreeing to pay the partnership debts. At the same time, and as a part of the arrangement of dissolution, Judge Miller deeded to C. L. Russell blocks nineteen and twenty, covenanting in the deed that the title was "clear, free and unincumbered by any act of the grantor, except as known by the parties" thereto. Complainant produces some evidence to establish the fact that at this time it was understood between Judge Miller and C. L. Russell, that the former was to pay off one-half

of this mortgage, but Miller denies this, and gives us to understand that he expected the surrender of the mortgage, and that failing to obtain it according to agreement, he, finally, in March, 1854, filed his bill in Chancery against C. L. Russell, and obtained decree by default, declaring the mortgage and notes null and void. He also claims that it was some years after this decree before he heard of any claim on behalf of David Russell.

This case does not require us to determine the matters in controversy between Judge Miller and C. L. Russell, or to decide whether the latter has at all times dealt honorably and fairly by the former. We are only required to find upon the evidence whether David Russell had become the owner of an interest in this mortgage prior to the dissolution of the partnership of Miller, Crowl and Russell, and if so, what the extent of that interest was, and whether it was in any way affected by the agreement at the time of the dissolution. It is not claimed that any distinct act was ever done by David Russell himself, that would have affected his interest, if he had any; but the defendants insist that the assignment to him was only colorable, and that even if it was in good faith, the mortgage was discharged by the arrangement which Judge Miller claims to have made with C. L. Russell in ignorance of any such assignment.

Upon this portion of the case the evidence is exceedingly unsatisfactory, and we cannot feel, in any conclusion we may adopt, that entire assurance of correctness that a Court will always desire to make the foundation of its judgments. The evidence of Judge Miller, it is agreed, derives strong confirmation from the fact that David Russell, though shown to have been in embarrassed circumstances, took no steps towards enforcing payment of the mortgage, as he would have been likely to do had he been the actual owner; and this argument is certainly not

without considerable force.   When we consider, however, that one of the parties against whose property the mortgage would be enforced was his son, who was also in embarrassed circumstances, there is nothing in the delay of legal proceedings so strange or so out of the ordinary course as to cast suspicion upon the evidence that tends to establish the ownership in David Russell.   We think there is a preponderance of evidence that this mortgage, with the accompanying notes, was transferred to David Russell at about the time stated in the bill; that he paid to C. L. Russell on such transfer, the sum of twenty-five hundred dollars, and that C. L. Russell informed his partners thereof previous to the dissolution of the copartnership.   And we are inclined to think that Judge Miller's proceedings in chancery against C. L. Russell to have the mortgage declared null, must have been based upon the assumption that he had a right to treat the mortgagee as the owner until the assignment was recorded.   There is some evidence in the case from which we may infer that such was his view of the law.

But whether David Russell bought the two mortgages, or only took an assignment thereof to secure the repayment of an advance of two thousand five hundred dollars to the partnership, is another question which is left in doubt by the evidence.   C. L. Russell states the transaction as a sale, but there are some circumstances which incline us to think that David Russell stood in position of mortgagee of the mortgages, rather than of owner.   C. L. Russell, himself, testifies to having expressed to Miller his father's willingness to receive the two thousand five hundred dollars and interest in satisfaction of the two mortgages, and we think, in view of the doubt which surrounds this part of the case, and the great difference between the amount of the mortgages, and the amount David Russell paid on the transfer, that it is our duty to hold the assignment to have been by way of security only.   We think in any case

where a party claims to have purchased securities at very much less than their real value, if the evidence is not clear whether the transaction was a sale of the securities or only a mortgage of them, very slight circumstances showing that the transfer was not understood at the time to be absolute, but was made to secure the repayment of the sum advanced, may be sufficient to turn the scale.

The defendants also claim that the mortgage has become satisfied by a transaction to which McKinney was a party after he became administrator of David Russell. Blocks nineteen and twenty, it seems, were sold on two different executions against C. L. Russell; John Moore becoming purchaser on one sale, and William H. Craig on the other. McKinney bought up Moore's claim and contested with Craig the possession and title to these two blocks. While litigation was in progress between them, McKinney entered into an arrangement with Albert Miller (the second) and one Abram Smith, by which in consideration of six thousand five hundred dollars, McKinney agreed to convey to them all his interest in blocks nineteen and twenty, and to cause the two mortgages hereinbefore mentioned to be released. There is a dispute between the parties as to how far this arrangement was carried into effect. It was embodied in a written contract, which was signed by McKinney and Miller, but not by Smith. McKinney also acknowledged the payment of seven hundred and fifty dollars on the contract. On November 5, 1864, McKinney and Albert Miller (the second) entered into a new contract, by which the former was to convey to the latter by quit claim deed all his interest in blocks nineteen and twenty in consideration of five thousand three hundred and seventy five dollars. The parties are not agreed as to how this new contract came to be ·made; McKinney, claiming that the old contract was abandoned, while Miller insists that the new contract was only a modification of

the old, as to the sum to be paid and the times of pay-
ment, which modification was made for certain reasons
which he gives, but which need not be here stated. He
claims that the agreement on the part of McKinney to re-
lieve the blocks to be conveyed from the lien of the two
mortgages was never abandoned or rescinded, and that he
expected it to be done when the land was conveyed. Mc-
Kinney gave a quit claim deed of blocks nineteen and
twenty to Albert Miller (the second) December 5, 1864,
covenanting therein that he had "not done or suffered any
act to be done or made any previous conveyances to weak-
en or impair his title to the property." Miller says he was
told by the conveyancer that this covenant was effectual to
relieve the land from the mortgages, and there is confirma-
tory testimony to the same effect. McKinney, on the other
hand, denies that there was any such understanding, or that
the deed was given in pursuance of any further or other
agreement than that embodied in the contract of Novem-
ber 5, 1864, which required from McKinney only a quit
claim deed of "all the interest held by" him "of every
name and kind whatever." In our opinion it is not in any
way legally made to appear that the contract of June 7,
1864, if it ever had any vitality, remained in force for any
purpose after that of November 5, 1864, was made, and
consequently the latter, and the deed given in pursuance
of it, are the instruments upon which the rights of the
parties, upon this branch of the case, must depend.

What, then, are the rights of the parties upon the state
of facts above set forth?

I. The bill in this case was filed twelve years after the
last note fell due, and not until all action of law to recover
the amount from the mortgagor had become barred. The
mortgage not being under seal derives its force as a con-
veyance from section 4,550 of the Compiled Laws, which
provides that "no bond, deed of conveyance or other con-

tract in writing, signed by any party, his agent or attorney shall be deemed invalid for want of a seal or scroll affixed thereto by such party." The doubt is suggested by the defense whether the provision that the instrument shall not be "deemed invalid" can have any further effect than to make it good as between the parties thereto; leaving it still necessary for the purposes of record and of constructive notice, that the instrument should have all the requisites specified in the recording laws, among which is mentioned the seal. And the query is also raised, whether the remedy in equity upon the mortgage should not be barred in ten years, in analogy to the statute of limitations which bars all remedy upon contracts and presumes a judgment paid at the expiration of that period. *Comp. L.* §§ *5,367, 5,384.*

We have no doubt, however, that the statute quoted was intended to give the unsealed instrument all the force and effect that a sealed one of the same tenor would have had, and that when the Legislature said it should not be deemed invalid for want of a seal, they meant to declare, and did declare in substance, that as a legal instrument it should not be affected by the want of that formality. The formality itself had ceased to be one of impressiveness or solemnity, and the statute meant to allow parties, at their option, to dispense with it without depriving the instrument of any of its legal incidents as a deed. And, as the bar to a remedy in equity has reference rather to the nature of the property affected, than to the character of the instrument which may affect it, we have no doubt the bill was brought in due season. The bearing of the delay in commencing foreclosure upon some of the questions of fact involved in the case we have already considered; but we are satisfied the delay cannot constitute an absolute bar to the suit.

II. The defendants insist that if, as we have found, David Russell received a transfer of the mortgages by way

of security instead of a purchase, the present bill should be dismissed upon the ground that the complainant has failed to establish the case made by it. The principle is familiar, and we have frequently had occasion to declare it; but we do not perceive that there is any such failure on the part of complainant to establish the material allegations of his bill as to bring the present case within this principle. The bill is to foreclose a mortgage given by Judge Miller to Cornelius L. Russell, and by the latter assigned to David Russell; and the allegation which is not supported by the evidence, is one which effects not the right to foreclose, but the amount which the complainant will be entitled to receive on the foreclosure. One who holds several mortgages as mortgagee, to secure a single debt, may foreclose either of them at his option separately until his debt is satisfied. The question here is, to what extent and for what amount the mortgage became a valid security in the hands of David Russell; and it is not different so far as the question now discussed is concerned, from what it would have been had the mortgage been given for advances, and the complainant had failed to establish advances to the full amount claimed by him. See *Robinson v. Cromelein, 15 Mich., 316.* We think therefore, that no formal defect appears in the case.

III. The defendants also insist that a mortgagor is justified and protected in making payment of his debt to the mortgagee until he has notice that the latter has parted with his interest; and that what took place between Judge Miller and C. L. Russell in respect to this mortgage, at the time of the dissolution of the partnership of Miller, Crowl and Russell, was without any knowledge of the transfer to David Russell, and constituted, in legal effect a payment and satisfaction of this mortgage. The view we have taken of the evidence relieves us from the necessity of examining further this position. We do not find the fact established, that Judge Miller was without knowledge of the assign-

ment to David Russell at that time, and, therefore, the rule of law referred to cannot be applied in the present case.

IV. The defendants also claim that the sale of blocks nineteen and twenty by McKinney to Albert Miller (the second) while the former held the present mortgage as administrator, and with an understanding that the lien of the mortgage upon those blocks should be discharged, and the receipt by McKinney on such sale of a sum larger than was owing the estate of his intestate, was in legal contemplation a satisfaction of the mortgage, and of the notes it secured. And this argument is thought to be strengthened by certain testimony from which the inference is drawn that McKinney, in buying and selling blocks nineteen and twenty, and in whatever he has had to do respecting the present demand, and even in his capacity as administrator, has in fact been acting in place of and as agent for C. L. Russell, who, by the agreement on the dissolution of the partnership became primarily liable to pay this debt; and that therefore the acts of McKinney should be regarded and have the same legal effect and be followed by the same consequences as if done by C. L. Russell himself.

An administrator, however, cannot in law be regarded as the agent of any single person interested in the estate, notwithstanding the evidence may be strong that he favors that person's interest. He is legally the trustee of all persons who have or may have an interest in the fund ; and if he fails faithfully to represent and protect the rights of all, the proper remedy may be sought by the parties concerned in the Court which appointed him and controls his actions. In a suit between him and a third party, his intention faithfully to discharge his trust is to be assumed; even though an heir at law against whom such third party has equities, was active in securing his appointment and in advising the suit. The case of *Morton v. Preston, 18 Mich. p. 60,* is an authority to the point that equities against an heir cannot prejudice the suit of the administrator. And with-

out considering what would have been the result in the present case had McKinney agreed to release blocks nineteen and twenty from a mortgage which he only held as administrator, we may content ourselves with saying that we do not find he has so agreed. There is nothing to that effect in the agreement of November 5, 1864, which we must regard as embodying the final contract between the parties, nor can the quit claim deed given by McKinney be referred to anything beyond his individual interest in the land conveyed. He does not in terms assume to convey anything more than that interest, and it is a reasonable presumption that one whose deed can be satisfied by applying it exclusively to an interest which he held in his own right, has not intended to convey that which he held only in the fiduciary capacity of administrator. And it will hardly be claimed that the conversation which took place at the time the deed was given can be considered for the purpose of enlarging the operation of the words. We must take the deed as we find it and give a reasonable construction to the words employed. And we find nothing in the deed which leads us to infer McKinney supposed that by it he was releasing any rights held by him as administrator.

V. The defendant, Mary Ann Miller, who now claims title to all the mortgaged property except blocks nineteen and twenty, insists that her property is, in equity, discharged from this mortgage by the course which David Russell has taken in respect to it. It is argued on her behalf that it cannot be doubted that, very soon after the dissolution of the partnership in 1852, David Russell knew of the equities existing between Judge Miller and C. L. Russell, and that the latter had agreed to pay this debt, if any really existed, and was in equity the real debtor. Yet there is evidence that, at C. L. Russell's suggestion, and for his benefit, and without any consent on the part of Judge

Miller, David Russell omitted any attempt to enforce the lien of the mortgage, or to collect the debt, until the demand, as a personal claim against Cornelius L. Russell, had become barred by the statute of limitations. It would therefore be greatly inequitable now to enforce this claim against Judge Miller or his assignees, when they can have no remedy over, or if any, a very uncertain one.

It should be a sufficient answer to this argument that it is not shown by evidence that David Russell knew of Judge Miller's equities as respects this demand. We may suppose from the relationship existing between C. L. Russell and himself, that probably that was the case, but it is by no means certain that a son, somewhat embarrassed in his circumstances, will lay open to his father the entire facts concerning his business transactions, and explain them all in their worst aspects. We suppose it must very often happen that the son, under such circumstances, will put a better face upon his affairs than the exact truth will warrant, or at least fail to mention matters which would show his embarrassments to be greater than he is willing the father should believe. The father is not necessarily to be the sufferer in his own interests by reason of such concealment, especially, when he has done nothing himself which has worked wrong to another and has only rested upon his supposed legal rights. It is not claimed that David Russell was ever requested by any one to take legal proceedings to enforce the mortgage against the property of C. L. Russell, and it does not appear that he knew or had reason to suppose there was anything inequitable in the delay to foreclose. We cannot therefore hold that he or his estate has lost anything by such delay.

VI. The only other matter we have occasion to notice relates to the conflicting claims of Mary Ann Miller and Albert Miller (the second) as to the order in which the mortgaged premises shall be sold to satisfy any amount that may be found due on the mortgage. Mary Ann Mil-

ler claims that as C. L. Russell was equitably bound to pay off this mortgage, that portion of the mortgaged property which was conveyed to him by Judge Miller became charged in equity with its payment, and that blocks nineteen and twenty should therefore be first sold, and resort be had to her property only in case of a deficiency after such sale. There might be force in this argument if C. L. Russell were still the owner of blocks nineteen and twenty; but there can be none when those blocks have passed into the hands of a purchaser who is not shown to have had any knowledge of the equities between Judge Miller and C. L. Russell. Albert Miller (the second) who has become vested with the rights acquired by both Moore and Craig on the execution sales against C. L. Russell, is such a purchaser. He claims, on the other hand, that on the familiar principle, that where the mortgagor conveys the mortgaged land in parcels, that which is first sold should be the last resorted to for the satisfaction of the mortgage, blocks nineteen and twenty should not be sold upon the present mortgage, except to satisfy any deficiency after a sale of the rest. This claim appears to us to be well founded in equity. Albert Miller (the second) in acquiring the title to blocks nineteen and twenty which Judge Miller had conveyed to C. L. Russell, had a right to suppose the ordinary rule was to be applied to the case and that Judge Miller expected to satisfy his mortgage from that portion of the mortgaged property not conveyed to Russell. There was nothing in the deed to Russell to apprise a purchaser from him of anything to affect this equitable rule, and such a purchaser would, therefore, have a right to rely upon it. He would not be bound by any oral understanding between Judge Miller and C. L. Russell, not embodied in the deed.

The decree of the Court below must be reversed, and a decree entered in this Court for a sale of the property

mortgaged, to satisfy the sum of two thousand five hundred dollars of principal, and interest thereon. As the payments, made by David Russell, were in instalments between the first of December, 1851, and the beginning of the following May, but the precise times cannot now. be fixed, it is perhaps equitable to compute interest on the whole sum from February 1, 1852, and we direct that it be done accordingly. The decree will direct blocks nineteen and twenty to be sold only to satisfy any deficiency after a sale of the other parcels. The complainant will recover costs of both Courts, and the cause will be remanded to the Court below for the execution of this decree.

The other Justices concurred.