## SCHIESSLER *v*. PIERCE.

1. FRAUD—MISREPRESENTATION AS TO AMOUNT OF CAPITAL STOCK IS
   MATERIAL—RESCISSION—TENDER.

   A statement to a prospective purchaser of stock in a
   corporation that its capitalization is but $50,000 when it
   is $250,000 is a misrepresentation of a material fact, and,
   if made to induce the purchase, and the purchase is made
   in reliance thereon, is ground for rescission, and, after
   tender back, recovery may be had of the money paid.

2. SAME—BURDEN OF PROOF—FRAUD NOT INFERRED.

   One alleging fraud has the burden of proof, and when re-
   lief is sought on said ground it must be proven clearly and
   conclusively; it may not be lightly inferred, and the de-
   frauded party must have made prompt complaint when
   the facts came to his knowledge.

3. SAME—EVIDENCE—PROOF—BURDEN OF PROOF—DIRECTED VERDICT.

   Although plaintiff's testimony as to said fraudulent mis-
   representations, which were denied by defendants, was not
   supported by any other witnesses, it cannot be said, as a
   matter of law, that recovery is thereby precluded, where
   there are other facts and circumstances in the case which
   support plaintiffs' claim, since the rule applies to the
   weight of the evidence, and not to the character of the
   proof necessary to sustain the charge made.

4. SAME—EVIDENCE—SUFFICIENCY.

   Evidence *held*, sufficient to justify a finding that the sales-
   man, who was a stockholder in defendant corporation, in
   selling said stock to plaintiffs, was acting for the corpora-
   tion and in pursuance of an arrangement between himself
   and the president of the corporation; that the claimed
   false representations were made, and that plaintiffs were
   deceived thereby.

5. SAME—EVIDENCE—PAR VALUE OF STOCK IMMATERIAL.

   In an action to recover money paid for stock in a corpo-
   ration whose capitalization was fraudulently represented

On rescission for fraud or misrepresentation in procuring sub-
scription to stock, see note in 33 L. R. A. 721.

On validity of subscription induced by false statements that
certain other persons were to invest in the enterprise, see note
in 29 L. R. A. (N. S.) 477.

to be $50,000, while in fact it was $250,000, the question as to whether the stock was worth par is immaterial, since it is apparent that stock in a corporation capitalized at $50,000 is of greater value than if the capitalization be $250,000.

Error to Wayne; Richter (Theodore J.), J. Submitted October 9, 1923. (Docket No. 58.) Decided November 13, 1923.

Case by John Schiessler and others against James G. Pierce and others for fraud in the sale of corporate stock. Judgment for defendants *non obstante veredicto*. Plaintiffs bring error. Reversed, and judgment entered on the verdict.

*Prentis, Mulford, Pugh & Fitch,* for appellants.

*Callender & Trevor,* for appellees.

Sharpe, J. Plaintiffs claim that in August, 1920, the individual defendants, in order to induce them to purchase stock in the defendant corporation, did represent to them that the capital stock of the corporation was but $50,000, whereas in fact it was $250,000; that, relying on such representation, they purchased 250 of such shares, paying therefor $2,500; that such representation was falsely and fraudulently made; that, after discovering such fraud, they tendered the stock to the defendants and demanded a return of their money, which demand was refused. This suit is brought to recover the money paid. There was a plea of the general issue. After the proofs were closed, defendants' motion for a directed verdict was reserved and the case submitted to the jury, who found for the plaintiff Martin Schiessler in the sum of $2,718.75. The motion having been renewed, a judgment was entered for the defendants *non obstante*

*veredicto.* Plaintiffs thereafter moved for a new trial, which was denied. Error is assigned on the entry of the judgment and the denial of such motion.

The motion for judgment *non obstante veredicto* was based on the want of sufficient competent proof to sustain the allegation of false and fraudulent representation. John Schiessler testified that the defendant Pierce spoke to them about purchasing stock in the defendant corporation; that he said "it is only a $50,000 corporation, and stock will be only sold between his friends, and furthermore that he was going to send one of his representatives to see me." He said "he had bought some himself—that it was a good buy. It was just new. The capitalization was $50,000. He repeated that half a dozen times. It was $50,000 and no more." He further testified that Mr. Nagle "came up early the next morning. He said Mr. Pierce sent him up, and that he sent him up about the Detroit Heater Corporation." That Mr. Nagle told him it was "a good buy. It was in a small corporation of only $50,000—only sold between the friends. I am sure. He told me it was only a $50,000 corporation about half a dozen times. He said he was going to buy all he could. He was going to take a second mortgage on his place because in the next two or three years that stock is going to put him on easy street;" that Mr. Schwartz was to have $20,000 for his patent and the balance of $30,000 was to be "sold among his friends." "He showed us a list. We read it over—to whom he had sold it. I think he said he had sold alone about $9,000. I saw about 10 or 15 parties' names on it which he said were going to take stock. He offered to sell us stock in the Detroit Heater Corporation. He said I could buy any amount I wished. He said there was only $30,000 would be sold." He further testified that they were invited to look at the plant and that a few days later they

went to the plant and looked it over; that about ten days later Mr. Nagle again came to defendants' shop and "started to talk about the stock. We told him we thought a $50,000 corporation—it looked all right to us." They purchased as above stated, the check having been given to Mr. Nagel and the stock certificate turned over by him. That "the next day or the day after Mr. Nagle came up again. He told me that there is still 200 shares that somebody refused to take or didn't have the money to pay for it, and if I wanted to take that—he asked me first if I had talked with my brother—I told him that I would take that 200 shares;" that soon after he learned that the capitalization was $250,000 and spoke to Nagle about it, and Nagle again assured him that it was "a $50,000 corporation;" that payment was stopped on the check given in payment of the second purchase; that afterwards the certificates were tendered and a demand was made for the return of the money, which was refused. His testimony is corroborated in most respects by that of the other plaintiffs. The stock certificates were put in evidence. The amount of the capitalization does not appear thereon.

A statement to a prospective purchaser of stock in a corporation that its capitalization is but $50,000 when it is $250,000 is a misrepresentation of a material fact and, if made to induce the purchase and the purchase is made in reliance on it, is ground for rescission and, after tender back, recovery may be had for the money paid. The rule as to the burden of proof in such cases is thus clearly stated by Mr. Justice STEERE in *Brooks* v. *Culver*, 168 Mich. 436, 443:

"The burden of proof is upon complainant. When relief is sought on the ground of fraud, it must be proven clearly and conclusively. It is not lightly inferred, and the defrauded party must have made

prompt complaint when the facts came to his knowledge."

In support of this rule, the following from *Hutchinson v. Poyer,* 78 Mich. 337, 340, was quoted:

"It is an elementary principle that he who impugns a transaction as fraudulent, which may or may not be so, is not sustained by his own assertion alone in case he is disputed, but has the burden on him to make his allegation good by independent evidence; for he who alleges that a transaction was fraudulent must prove it."

Counsel assume that under these holdings the denial by the defendants that they made the statements testified to by plaintiffs precludes recovery, without additional proof, as a matter of law.   We do not so read these decisions.   It may be well said that where interested witnesses testify to facts tending to establish fraud and other witnesses, also interested, and for all that appears fully as credible, deny the truth thereof, the fraud is not proved.   *Allison* v. *Ward,* 63 Mich. 128.   Plaintiffs' case fails, not by reason of the want of testimony of witnesses other than the parties interested, but because the facts are not established by clear and convincing proof.   The rule applies to the weight of the evidence and not to the character of the proof necessary to sustain the charge made.   The words "independent evidence," used in the *Hutchinson Case,* refer only to evidence outside the pleadings.   Under the old practice, when an answer was made under oath, there having been no waiver thereof in the bill, statements made therein responsive to the averments in the bill were treated as evidence. *Schwarz* v. *Wendell,* Walk. Ch. 267; *Robinson* v. *Cromelein,* 15 Mich. 316; *Roberts* v. *Miles,* 12 Mich. 297; *Matteson* v. *Morris,* 40 Mich. 52; Jennison's Chancery Prac. pp. 83, 84; Puterbaugh's Pl. & Prac.

p. 170.    Under our present rule (Circuit Court Rule No. 25) :

"Neither a sworn bill nor a sworn answer shall have the force of evidence except as to admissions and except on the hearing of motions and petitions."

Replications are abolished by the judicature act (3 Comp. Laws 1915, § 12466), and now the ordinary rules of evidence are to be applied in taking proofs and weighing the evidence submitted. *Helmer* v. *Van Wormer*, 187 Mich. 1.

Were there no other facts or circumstances to support the claim of the plaintiffs, it might be urged with force that the testimony of the plaintiffs should have no greater weight than that of the defendants. It appears, however, that the certificates of stock issued by the officers of the corporation and delivered by the defendant Nagle to plaintiffs omitted to state the capitalization of the corporation. This we regard as very significant. While it is not essential to the rights of stockholders that such certificates be issued, as they are but evidence of title to the stock and not the stock itself, when issued they are written acknowledgments by the corporation of the interest of the stockholder in the corporate property. Unless the capitalization be stated in them, they are of no value for such purpose. The apparent value of 100 shares of stock in a $50,000 corporation is much different from their value in the same corporation if capitalized at $250,000. We find no statute which provides for the form of such certificates, but are impressed that it is most unusual to issue them without a statement showing the total capitalization. In fact, our attention has never been called to any issued without it. It was this omission, discovered by one of the plaintiffs, which led them to make further inquiry concerning the capitalization, resulting in the renewed

assurance that it was but $50,000.    It also appears that the plaintiffs looked over the plant of the corporation before purchasing.    They owned stock in other corporations and sought to satisfy themselves by a personal examination of the value of the proposed investment.    Unless they had had some assurance as to the capitalization, their efforts in this direction would have been of no avail.    We are impressed after a careful reading of the entire record that the proofs submitted by them, when considered with the other facts and circumstances appearing in the record, justified the submission of the question at issue to the jury, notwithstanding the denial of the defendants.

Taking advantage of the provisions in section 6 of Circuit Court Rule No. 66, counsel for the defendants have assigned error on the verdict and insist that, in the event that the judgment rendered be reversed, a new trial should be granted.    These assignments are not discussed by counsel in their brief, the only reference to them being a statement that they are not waived.    In effect, they all relate to the claim of the defendants that there was no sufficient evidence to support the verdict, and the further claim that it was against the great weight of the evidence.    What has already been said fairly disposes of these claims. Under the proof, we are not inclined to disturb the verdict for either of these reasons.

It is urged that there was no agency proven between Mr. Pierce and Mr. Nagle.    Mr. Pierce was the president of the corporation.    Mr. Nagle admitted that he was a stockholder in it.    Mr. Pierce admits that, at the time of his first conversation with plaintiffs relative to their purchasing stock, he "maybe told them that Mr. Nagle would call on them on his next trip."    He denied that he asked Nagle to call on them, but it is significant that Nagle did call the next

morning and urged the plaintiffs to buy this stock. Nagle denied in most positive terms on his direct-examination that Pierce had ever spoken to him about seeing the plaintiffs or talking with them.   On cross-examination he testified that when the plaintiff Lena Schiessler asked him a few days after the purchase about the amount of the capitalization he hold her he would find out about it and that he inquired about it from Mr. Schwartz.   He was then asked:

"*Q.* You first found out what the capital stock of this corporation was on the day following the complaint made by Lena?

"*A.* No, I knew the capital stock was $250,000 before that.

"*Q.* You knew that from the beginning?

"*A.* Yes, I knew that for a month or such a matter.

"I never worked on it.   I never sold any of that stock.   Mr. Pierce, Mr. Hirtsch and Mr. Schwartz, all of them told me about the capital stock.   I asked all three of them so there would be no mistake, and Mr. Pierce told me.

"*Q. Did Mr. Pierce tell you to tell that it was $250,000 or $50,000?*

"*A.* $250,000.

"*Q. He told you to tell them it was $250,000?*

"*A. Yes.*"

We think there was ample proof to justify a finding that Nagle was acting for the corporation and that what he did and said was in pursuance of an arrangement between himself and Pierce, that both of them made the representation as to the amount of the capital stock as claimed by plaintiffs, that such representation was false and was made with intent to deceive plaintiffs, that they were deceived thereby and made the purchase in reliance thereon.

It is also urged in one of defendants' assignments that "there was no testimony that the shares of stock were not worth par value."   Plaintiffs did not seek

to recover the value of the stock.     Their action was brought to recover the money paid.     The value of the stock was immaterial except in its bearing on the question of the fraud committed.     That 100 shares of stock in a corporation capitalized at $50,000 is of greater value than if the capitalization be $250,000 is apparent.

The judgment entered *non obstante veredicto* is reversed and set aside.     The trial court will enter judgment on the verdict as rendered.     The appellants will recover costs.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.